IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| STEVEN WILLIAMS, JR.,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>CITY AND COUNTY OF HONOLULU, *et al.*,<br><br>　　　　Defendants. | Civil No. 24-00556 MWJS-RT<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT, DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE PROPOSED SECOND AMENDED COMPLAINT, AND GRANTING LEAVE TO FURTHER AMEND |

## INTRODUCTION

In this civil rights action, pro se Plaintiff Steven Williams, Jr. alleges that Honolulu Police Department (HPD) officers stopped him at a sobriety checkpoint and requested his driver's license. By his own account, Williams "cloaked himself in the 4th amendment and refused to relinquish his papers." ECF No. 25, at PageID.90. In his First Amended Complaint (FAC), ECF No. 12—and as more fully fleshed out in a proposed Second Amended Complaint (SAC), ECF No. 25—Williams contends that his resulting arrest and the search of his person incident to that arrest were unconstitutional.

The FAC fails to state a claim for relief against any Defendant. This is in part because, at least under the facts Williams has proffered to date, the Fourth Amendment did not entitle him to refuse the HPD officers' request for a valid license. The Court

therefore DISMISSES the FAC in its entirety.  And because Williams' proposed SAC does not remedy the FAC's deficiencies, the Court DENIES Williams' request for leave to file it.  Recognizing that Williams is proceeding pro se and that he could potentially cure the FAC's deficiencies with further amendment, however, the Court GRANTS Williams leave to file a further amended complaint.

## BACKGROUND

### A.    The First Amended Complaint

Although Williams filed an initial complaint on December 18, 2024, ECF No. 1, he amended it as of course by filing his FAC on January 2, 2025, ECF No. 12; *see also* Fed. R. Civ. P. 15(a)(1)(A) ("A party may amend its pleading once as a matter of course no later than . . . 21 days after serving it.").  The FAC is currently the operative complaint in this case.

### 1.    The Defendants and Claims

In the FAC, Williams names seven defendants:  the City and County of Honolulu (the City), HPD, and five HPD officers (the Officer Defendants) named in both their official and individual capacities.[1]  The FAC lists eight counts, six of which are brought under 42 U.S.C. § 1983:

- Fourth Amendment unlawful arrest (Count 1);

---

[1]    Those officers are Jared Spiker, Derek Ota, Christopher John Oallesma, Hyun Jang, and Vanessa Naluai-Kaufusi.  ECF No. 12, at PageID.40-41.

- Fourth Amendment unlawful search and seizure (Count 2);

- Fourth Amendment unlawful seizure of identification (Count 3);

- Fourth Amendment retaliation for protected conduct (Count 4);

- Fourteenth Amendment violation (Count 5); and

- Municipal liability for failure to train and supervise (Count 6).

ECF No. 12, at PageID.42.

The FAC also alleges that Defendants conspired against his rights as a citizen, in violation of 18 U.S.C. § 241 (Count 7) and deprived him of rights under the color of law, in violation of 18 U.S.C. § 242 (Count 8). *Id.*

### 2. The Factual Allegations

The FAC offers few factual particulars. It alleges that around 12:53 a.m. on October 23, 2023, at the corner of Ala Moana Boulevard and Atkinson Drive in Honolulu, the Officer Defendants "arrested Mr. Williams without reasonable suspicion, probable cause or other basis in law." *Id.* at PageID.44. According to the FAC, "Mr. Williams was merely exercising his 4th Amendment Right to be free from unreasonable searches and seizures." *Id.* And "[a]fter unlawfully arresting and searching Mr. Williams, the Defendants, and each of them, conspired to fabricate actions by Mr. Williams and a basis for arrest." *Id.* Williams "sustained a welt on his left wrist due to the handcuffs," and he maintains that "the complained of incident throughout this entire Complaint [was] the result of a failure of the City/County of

Honolulu and the Honolulu Police Department to supervise, train, and discipline its officers. . . ." *Id.* at PageID.43.

### B. Defendants' Motion to Dismiss and Plaintiff's Motion for Leave to File a Second Amended Complaint

On January 16, 2025, Defendants filed a motion to dismiss the FAC. ECF No. 22. Defendants argue that HPD should be dismissed as a party duplicative of the City, ECF No. 22-1, at PageID.73-74; the FAC should be dismissed in its entirety because it "fails to set forth any details regarding" Williams' claims, *id.* at PageID.74; there are no valid municipal liability claims pled against the City, *id.* at PageID.75-77; and 18 U.S.C. §§ 241 and 242 are criminal statutes that Williams, as a private litigant, is not authorized to enforce, *id.* at PageID.77-78.

Although Defendants seek dismissal of the entire FAC, they do not contend that it should be dismissed with prejudice in its entirety. Instead, Defendants seek dismissal with prejudice only as to HPD and the counts brought under the criminal statutes. *Id.* at PageID.74, 78.

On February 4, 2025, after Defendants had moved to dismiss the FAC, Williams filed a proposed SAC. ECF No. 25. In the proposed SAC, Williams no longer lists HPD as a defendant and no longer alleges counts under 18 U.S.C. §§ 241 and 242. *See id.* at PageID.86-88 (listing defendants), 89 (listing counts). The proposed SAC also purports to add Chief of Police Arthur Joe Logan as an additional defendant, *id.* at PageID.86,

4

and it provides additional factual detail about the basis of Williams' claims, *id.* at PageID.90-94.

Similar to the FAC, the proposed SAC alleges that Williams was stopped at a "sobriety checkpoint," that the Officer Defendants "requested Mr. Williams['s] driver's license," and that "Mr. Williams cloaked himself in the 4th amendment and refused to relinquish his papers." *Id.* at PageID.90. But the proposed SAC clarifies that Williams refused to hand over his license because he believed that the Officer Defendants lacked "reasonable articulable suspicion of a crime to demand his driver's license," and he therefore "told the officers that he will take his arrest and allow a judge or jury to decide his fate." *Id.* at PageID.90-91. Williams was thereafter arrested, a search incident to arrest was conducted, and the Officer Defendants appear to have recovered Williams' driver's license from his person during that search. *Id.* at PageID.91.

Apart from submitting this proposed SAC, Williams did not oppose Defendants' motion to dismiss.

Williams had already amended his complaint once before, and he was therefore required to seek the Court's leave before filing any additional amended pleadings. *See* Fed. R. Civ. P. 15(a)(2). The Court has construed his filing as a motion for leave to file a proposed SAC. *See* ECF No. 26 (Entering Order). In the meantime, the FAC remains the operative complaint, and service of process for the proposed SAC has not been authorized as to Chief Logan. The Court therefore turns to the merits of Defendants'

motion to dismiss the FAC and resolves that motion without a hearing as authorized by Local Rule 7.1(c).

## DISCUSSION

### A.     Motion to Dismiss Legal Standards

Defendants' motion to dismiss is brought under Federal Rule of Civil Procedure 12(b)(6), which authorizes dismissal of an action for "failure to state a claim upon which relief can be granted." Rule 12(b)(6) motions "test[] the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). To survive such motions, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).

To determine whether a complaint's allegations are sufficient, the Court must proceed in two steps. *See Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995-96 (9th Cir. 2014). First, legal conclusions couched as factual allegations are disregarded. *Id.* at 996; *Iqbal*, 556 U.S. at 679. Second, assuming the veracity of well-pleaded allegations, in addition to all reasonable inferences that could be drawn from them, the Court must "determine whether they plausibly give rise to an entitlement to relief." *Eclectic Props.*, 751 F.3d at 996 (quoting *Iqbal*, 556 U.S. at 679); *see also Navarro*, 250 F.3d at 732. The Court will dismiss claims for which there is either "no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro*, 250 F.3d at 732.

### B. Defendants' Motion to Dismiss HPD as a Defendant and to Dismiss Counts 7 and 8 Is Granted with Prejudice

Although Williams filed a proposed SAC, he did not otherwise file any opposition to Defendants' motion to dismiss. Moreover, the proposed SAC itself removes HPD as a defendant and deletes the counts predicated on 18 U.S.C. §§ 241 and 242. It thus appears that Williams does not oppose Defendants' arguments that HPD should be dismissed as a defendant (because it is a duplicative party) and that Williams may not enforce criminal statutes through a civil lawsuit.

Williams astutely concedes these grounds, for Defendants' arguments are plainly correct. As an administrative arm of the City, HPD is "not separately subject to suit under § 1983." *Oyadomari v. Sutherland-Choy*, No. CV 19-00656, 2020 WL 61573, at *2 n.6 (D. Haw. Jan. 6, 2020) (citations omitted). Williams' claims against HPD therefore must be treated as "claims against the municipality," and there is no reason for the City to be effectively named twice as a defendant. *Gomes v. County of Kauai*, 481 F. Supp. 3d 1104, 1110 (D. Haw. 2020). It is similarly well-established that "a private litigant lacks standing to compel an investigation or prosecution of another person," and so any amendment by Williams as to the two claims brought under criminal statutes would be futile. *Duell v. McCormick*, No. 24-MC-00639, 2024 WL 4786265, at *1 (D. Haw. Nov. 14, 2024) (cleaned up).

Accordingly, Defendants' motion to dismiss HPD as a defendant and to dismiss Counts 7 and 8 of the FAC—the counts founded upon 18 U.S.C. §§ 241 and 242—is GRANTED with prejudice.

### C. Defendants' Motion to Dismiss Is Granted Without Prejudice in All Other Respects

Given that Williams did not file an opposition to Defendants' motion to dismiss, and that he instead proposed the proposed SAC with its additional factual detail, it also appears that he accepts the FAC did not adequately plead any of his other counts, including a municipal liability claim. The Court therefore GRANTS Defendants' motion to dismiss the remainder of the FAC.

Williams has offered a proposed SAC, however, which appears to be an effort to address the deficiencies Defendants have identified in the FAC. The question, then, is whether the proposed SAC adequately addresses those identified deficiencies. Because the Court concludes that the proposed SAC does not do so, it denies Williams' request to file it. The Court reaches this conclusion for three reasons.

1. As an initial matter, the proposed SAC rests on an incorrect legal premise. In Williams' view, the Fourth Amendment (as applied to the states through the Fourteenth) entitled him to "refuse[] to relinquish" his driver's license when HPD officers asked for it at a sobriety checkpoint. ECF No. 25, at PageID.90. He appears to contend that the Officer Defendants could not stop or ask him for a driver's license unless they had reasonable suspicion that Williams had committed a crime. *Id.* And in

8

support of these propositions, the proposed SAC cites *Delaware v. Prouse*, in which the Supreme Court held that police officers on a roving patrol could not exercise "unbridled discretion" to stop automobiles to check a driver's license and a vehicle's registration without reasonable suspicion. 440 U.S. 648, 663 (1979).

Williams therefore contends that *Prouse* prohibits the conduct complained of here. But that contention is not a correct interpretation of that case or the Fourth Amendment's protections. In *Prouse* itself, the Supreme Court was careful to limit its holding to roving patrols exercising discretion in the targeting of vehicles to stop. The Court made clear that its "holding *does not* preclude . . . States from developing methods for spot checks that involve less intrusion or that do not involve the unconstrained exercise of discretion," such as "[q]uestioning of all oncoming traffic at roadblock-type stops." *Id.* In other words, *Prouse* did not prohibit—and, instead, appears to have endorsed—the use of checkpoints at which drivers are asked for a valid driver's license. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 737 (2011) (describing *Prouse* as having "approved vehicle checkpoints set up for the purpose of keeping off the road unlicensed drivers"). And the Supreme Court has more recently confirmed that a "roadblock with the [primary] purpose of verifying drivers' licenses and vehicle registrations would be permissible." *City of Indianapolis v. Edmond*, 531 U.S. 32, 37-38 (2000); *see also Demarest v. City of Vallejo, California*, 44 F.4th 1209, 1221, 1223 (9th Cir. 2022) (recognizing that "systematically add[ing] a license check to a DUI checkpoint" may also be

9

constitutional, and that "[t]he mere request to produce a facially valid license is a relatively modest additional intrusion on the liberty of a motorist who has already been properly stopped at a checkpoint").

To be sure, the Supreme Court has not held that a checkpoint is per se constitutional. A plaintiff could challenge the constitutionality of a checkpoint by plausibly alleging that it was not reasonable "on the basis of the individual circumstances." *Demarest*, 44 F.4th at 1220 (quoting *Illinois v. Lidster*, 540 U.S. 419, 426 (2004)). For example, a plaintiff could allege that the checkpoint was not conducted "pursuant to objective guidelines that minimized the discretion of the officers on the scene and eliminated the kind of standardless and unconstrained discretion that might give rise to constitutional concerns." *Id.* (cleaned up). Or a plaintiff could allege that a license checkpoint was conducted in an unreasonable manner because each driver was detained for an unduly long period of time. *Id.* at 1223 (concluding, in the circumstances of the case, that "the license checks' contribution to the length of the checkpoint stops is marginal, if not de minimis").[2] Finally, a plaintiff could make the

---

[2] The question, to be clear, would be whether drivers as a whole were unreasonably detained. Although "the duration" of Williams' seizure was potentially "much longer," than other drivers' stops, that delay "is attributable to his refusal to produce his driver's license," which would have "justified a further detention." *Demarest*, 44 F.4th at 1223. Williams does not dispute that refusing a lawful command to produce a driver's license is a violation of Hawaiʻi law; he merely contends that the officers could not constitutionally make the request. His argument therefore must fail unless he is able to articulate an adequate factual basis for concluding that the checkpoint, or his detention, was unreasonable.

10

separate point that, even if his arrest were lawful, officers used excessive force to carry it out.

But the proposed SAC does not allege facts that would plausibly show any of the above contentions. This deficiency, standing alone, is reason enough to deny the request for leave to file it.

2. A second reason why the proposed SAC is not legally sufficient is that it does not adequately allege municipal liability against the City. The proposed SAC alleges that HPD "has a Pattern and Practice of unconstitutional arrest at sobriety checkpoints," citing a study by the ACLU. ECF No. 25, at PageID.91. As the proposed SAC's allegations themselves make clear, however, that study addressed arrests for operating vehicles under the influence. Even assuming the study were sufficient to establish that HPD did not properly arrest drivers in that context, it would not further the claims in the proposed SAC, because Williams was arrested for refusing to show a valid driver's license—not for any allegations related to driving while under the influence. As noted, unless the checkpoint itself was somehow unreasonable, it was not unlawful for the Officer Defendants to request his license as they did.

For his municipal liability claim, then, Williams would, as a threshold matter, need to allege sufficient facts to plausibly show that HPD had a pattern or practice of establishing unconstitutionally unreasonable checkpoints. Furthermore, given that he relies on a failure-to-train theory, Williams would need to allege what "particular

11

omission in the City's training program" caused the constitutional deprivation. *Cadiente v. City & Cnty. of Honolulu*, No. CV 24-00022, 2024 WL 1703126, at *5 (D. Haw. Apr. 19, 2024) (cleaned up).  The proposed SAC does not offer sufficient factual allegations of this sort, and its municipal liability claim against the City is therefore deficient.

3.  The proposed SAC falls short in a third respect:  it does not offer sufficient factual allegations to support liability against Chief Logan.  Although the proposed SAC generally alleges that unlawful alcohol-related arrests occurred "under the tenure of defendant Chief Arthur Logan," ECF No. 25, at PageID.91, it does not similarly allege any pattern or practice of unreasonable checkpoints, or any practice related to the request for driver's licenses that affected Williams in this case.  And the proposed SAC does not plausibly allege that Chief Logan was in fact involved in, or otherwise constitutionally culpable for, any of the alleged wrongdoing.  Accordingly, the proposed SAC does not offer any basis for holding Chief Logan liable.

### D. Leave to Amend

For the foregoing three reasons, the Court does not grant Williams leave to file the proposed SAC.  The Court recognizes, however, that Williams is proceeding pro se and could possibly cure the deficiencies that currently exist in the proposed SAC, as identified above.  It therefore GRANTS Williams leave to file a further amended complaint (except as to the aspects that the Court dismissed with prejudice, as explained above), subject to the conditions set forth below.

# CONCLUSION

For the foregoing reasons, the Court DISMISSES the FAC, DENIES leave to file the proposed SAC, and GRANTS Williams leave to file a Second Amended Complaint.

If Williams elects to file an amended complaint, he must comply with the following requirements:

(1)  the deadline to file an amended complaint is March 28, 2025;

(2)  the amended complaint should be titled "Second Amended Complaint";

(3)  Williams should not name HPD as a defendant or bring counts under 18 U.S.C. §§ 241 or 242, given the Court's grant of Defendants' motion to dismiss those aspects of the FAC with prejudice; and

(4)  Williams must cure the deficiencies in the proposed SAC that have identified above.

Williams is cautioned that failure to timely file an amended complaint that conforms with this Order will result in automatic dismissal of this action.

IT IS SO ORDERED.

DATED: February 26, 2025, at Honolulu, Hawai'i.



/s/ Micah W.J. Smith

Micah W.J. Smith
United States District Judge

Civil No. 24-00556 MWJS-RT, *Steven Williams Jr. v. City and County of Honolulu*, et al.; ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT, DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE PROPOSED SECOND AMENDED COMPLAINT, AND GRANTING LEAVE TO FURTHER AMEND